1 STEPHAN C. VOLKER (CBN 63093)
ALEXIS E. KRIEG (CBN 254548)
2 STEPHANIE L. CLARKE (CBN 257961)
LAW OFFICES OF STEPHAN C. VOLKER
3 436 14th Street, Suite 1300
Oakland, California 94612
4 Tel:    510/496-0600
Fax:    510/496-1366
5 Email:  svolker@volkerlaw.com

6 Attorneys for Plaintiff
CALIFORNIA ENVIRONMENTAL PROTECTION ASSOCIATION

7

10.587.02

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10 CALIFORNIA ENVIRONMENTAL        )   Case No.
   PROTECTION ASSOCIATION, a       )
11 California corporation,          )   **COMPLAINT FOR INJUNCTIVE**
                                    )   **RELIEF, CIVIL PENALTIES, AND**
12                Plaintiff,        )   **REMEDIATION**
                                    )
13        v.                        )
                                    )
14 DENBESTE YARD & GARDEN, INC., a  )
   California corporation,          )
15                                  )
                 Defendant.         )
16 _____ )

17

18      Plaintiff CALIFORNIA ENVIRONMENTAL PROTECTION ASSOCIATION

19 ("CEPA") hereby brings this civil action pursuant to the Federal Water Pollution Control Act,

20 also known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*.

21                              **INTRODUCTION**

22      1.      This action is a citizen suit for injunctive relief, civil penalties, and remediation

23 brought against Defendant Denbeste Yard & Garden, Inc. ("defendant"), for current and ongoing

24 violations of the National Pollutant Discharge Elimination System ("NPDES") permit

25 requirements of the CWA.

26      2.      On or about April 21, 2016, CEPA provided notice of defendant's violations of the

27 CWA – and of CEPA's intention to sue defendant – to the (1) Administrator of the United States

28 Environmental Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine,

(3) Executive Director of the State Water Resources Control Board ("State Board"), (4) Executive Director of the North Coast Regional Water Quality Control Board ("Regional Board"), and (5) defendant, as required by the CWA.  33 U.S.C. § 1365(b)(1)(A).  A true and correct copy of CEPA's 60-Day Notice of Defendant's Violations ("Notice") is attached as Exhibit 1, and incorporated by reference.  The State Board and Regional Board both received the Notice on April 25, 2016, the Regional Administrator received the Notice on April 26, 2016, the Administrator received it on April 27, 2016, and defendant received the Notice on May 2, 2016.

3.     More than sixty days have passed since CEPA's Notice was served on the Administrators, State Board, Regional Board, and defendant.  CEPA is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this Complaint.  This action's claim for civil penalties is not barred by any prior administrative penalty under section 309(g) of the CWA, 33 U.S.C. § 1319(g).

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1331 (federal question), and 33 U.S.C. section 1365(a) (CWA citizen suit jurisdiction). The relief requested is authorized pursuant to 28 U.S.C. sections 2201-2202 (declaratory relief), 33 U.S.C. sections 1319(d) (civil penalties) and 1365(a) (injunctive relief and civil penalties).

5.     Venue is proper because Denbeste Yard & Garden, Inc. and its discharging facility reside and the events or omissions giving rise to CEPA's claims occurred in this Judicial District. 28 U.S.C. § 1391(b)(1), (2).  Venue is also proper because the Facility's CWA violations have occurred and are occurring within this Judicial District.  33 U.S.C. § 1365(c)(1).

6.     Pursuant to this Court's intradistrict assignment rule, Civil Local Rules 3-2(c), 3-2(d), and 3-3 this action shall be assigned by the clerk to either the San Francisco Division or the Oakland Division.

## PARTIES

7.     Plaintiff CALIFORNIA ENVIRONMENTAL PROTECTION ASSOCIATION ("CEPA") is a Sonoma County-based environmental membership organization incorporated

under the laws of the State of California.  Its members work to protect, enhance, and assist in the restoration of rivers, creeks, streams, wetlands, vernal pools, and their tributaries located in California.  Members of CEPA reside and work near the Laguna de Santa Rosa and the Russian River, and use those waters and their watersheds for recreation, sports, fishing, swimming, hiking, photography, nature walks and scientific study.  Their use and enjoyment of these natural resources are specifically impaired by defendant's violations of the CWA.

8.     Defendant's ongoing violations of the General Permit and the CWA will cause irreparable harm to CEPA and its members, for which they have no plain, speedy, or adequate remedy.  The relief requested will redress the ongoing injury in fact to CEPA and its members.

9.     CEPA is informed and believes, and on such information and belief alleges, that defendant DENBESTE YARD & GARDEN, INC., is the operator of the soil blending facility located at 26916 Asti Road, Cloverdale, California (the "Facility").  Denbeste Yard & Garden, Inc. was formed on November 19, 1999 and is identified in the Regional Board's records as the operator of the Facility.  Paul Denbeste is identified as the operating manager and owner of Denbeste Yard & Garden, Inc. in the documents on file with the Regional Board, and is the agent for service of process on the defendant.

## CLEAN WATER ACT

10.     Congress declared that the CWA was designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" through federal and state cooperation to develop and implement "programs for preventing, reducing, or eliminating the pollution of navigable waters and ground waters."  33 U.S.C. §§ 1251(a), 1252(a).  In furtherance of these goals, the CWA prohibits all discharges except those in compliance with an NPDES permit.  33 U.S.C. §§ 1311, 1342.  The EPA promulgates regulations to implement the NPDES permitting system at 40 C.F.R. parts 122-129.

11.     Pursuant to the requirements of the CWA, the State Board developed a General Permit for Storm Water Discharges Associated With Industrial Activity ("General Permit") within the state of California.  33 U.S.C. § 1342; 40 C.F.R. § 122.26; NPDES General Permit No. CAS000001, State Board Order No. 92-12-DWQ, amended by Order No. 97-03-DWQ and

1    Order No. 2014-0057-DWQ.  All facility operators subject to storm water permitting

2    ("dischargers"), including those that perform industrial activities, must apply to their Regional

3    Board for an NPDES permit under the General Permit or another NPDES permit.  *Id.*  Failure to

4    do so violates the CWA.  *Id.*; General Permit § XXI.B.

5         12.    All dischargers covered under the previous NPDES permit (State Board Order No.

6    97-03-DWQ ("1997 General Permit")) intending to continue a regulated activity after the

7    expiration of that permit on June 30, 2015, were required to register for coverage by resubmitting

8    permit registration documents via the State's online Storm Water Multiple Application and

9    Report Tracking System ("SMARTS"), on or before July 1, 2015.  General Permit §§ II.B.1,

10   II.B.4.b, II.B.4.c, and XXI.B.

11        13.    The General Permit strictly prohibits all industrial storm water discharges, unless

12   specific requirements are met.  General Permit §§ I.C, III.  The General Permit requires that the

13   discharger (1) prepare, "certify and submit" an Annual Report on the year's discharge activities

14   including compliance with the CWA and General Permit (General Permit § XVI), (2) perform

15   visual observations and conduct sampling and analysis to monitor any discharges (General

16   Permit § XI), and (3) prepare a comprehensive site-specific Storm Water Pollution Prevention

17   Plan ("SWPPP")[1] (General Permit § X), among other requirements.  Where a facility operator

18   fails to "comply with all standard conditions [of the] General Permit," it shall "constitute[] a

19   violation of the [CWA] and the Water Code and is grounds for enforcement action and/or

20   removal from General Permit coverage."  General Permit § XXI.A; 33 U.S.C. § 1342.

21        14.    The General Permit requires dischargers to "develop and implement a site-specific

22   SWPPP for each industrial facility covered by [the] General Permit."  General Permit §§ I.I.54,

23   X.A.  The SWPPP must contain (1) the facility name and contact information, (2) a site map, (3)

24   a list of industrial materials, (4) descriptions of potential pollution sources, (5) an assessment of

25   those sources, (6) minimum Best Management Practices ("BMPs"), (7) advanced BMPs, if

26   necessary, (8) a monitoring implementation plan, (9) an annual evaluation, and (10) dates when

27

28   [1] The version of defendant's SWPPP available on the SMARTS database is incorrectly
     paginated.  Its first page of text is shown as page 10, not 1 as indicated in its Table of Contents.

the SWPPP was prepared and amended.  General Permit § X.A.  All of this information must be submitted electronically via SMARTS by July 1, 2015.  General Permit §§ I.I.54, II.B.1.b.iii, II.B.4.e, II.B.4.f, II.D.1.a, X.B.  The SWPPP must also be resubmitted to SMARTS "within 30 days" of any significant revisions to the SWPPP, or every three months where there are minor revisions.  General Permit §§ X.B.2, X.B.3.

a.  A discharger shall prepare and implement a Monitoring Implementation Plan as part of the SWPPP, which is designed to assist the discharger in developing a comprehensive plan for the monitoring requirements in the General Permit and to assess their monitoring program.  General Permit § X.I.  The Monitoring Implementation Plan must, among other requirements, (1) identify those assigned to conduct monitoring, (2) describe discharge locations, visual observation procedures, and response procedures, and (3) explain any deviations from monitoring requirements.  General Permit §§ X.I.1, X.I.2, X.1.3.

b.  The SWPPP must be signed and certified as "true, accurate, and complete," and therefore cannot contain internal contradictions.  General Permit §§ I.I.54, II.A., XXI.L; General Permit Appendix 1.  Internal inconsistencies would render the SWPPP ineffective under the General Permit and would require revisions to the SWPPP and submission to the SMARTS database.  Similarly, missing or incomplete information would require additional research and analysis, revision of the SWPPP and the necessary submission to SMARTS.  An incomplete or inconsistent SWPPP violates the General Permit and subsequently the CWA.  General Permit §§ XXI.A; 33 U.S.C. § 1342.

15.  Pursuant to General Permit section XI, dischargers are required to monitor all discharges to ensure compliance with the provisions and purpose of the CWA, including visual observations (General Permit § XI.A), sampling, and analysis (General Permit § XI.B).  The General Permit mandates that dischargers "collect and analyze storm water samples from two (2) [Qualifying Storm Events ("QSEs")] within the first half of each reporting year (July 1 to December 31) and two (2) QSEs within the second half of each reporting year (January 1 to June 30)" "from each drainage area at all discharge locations."  General Permit §§ XI.B.2 (first quote), XI.B.4 (second quote).  Dischargers are then required to "submit all sampling and

analytical results for all [samples] via [the Storm Water Multiple Application and Report Tracking System ("SMARTS")] within 30 days of obtaining all results for each sampling event." General Permit § XI.B.11.a.  Failure to comply with these General Permit provisions violates the CWA.  General Permit § XXI.A ("Permit noncompliance constitutes a violation of the [CWA] and the Water Code and is grounds for enforcement action" or NPDES coverage termination); 33 U.S.C. § 1342.

16.     Under both the current and 1997 General Permits, dischargers are required to submit an Annual Report summarizing the year's monitoring and sampling, and addressing any deficiencies in those required actions.  General Permit § XVI; 1997 General Permit § B.14. Failure to submit an adequate Annual Report violates the General Permit, and subsequently the CWA.  1997 General Permit § C.1; General Permit § XXI.A; 33 U.S.C. § 1342.

a.     A discharger's Annual Report for July 1, 2014 through June 30, 2015 is governed by the previous permit – the 1997 General Permit – which remains in effect for the 2014-2015 Annual Report and enforcement requirements only.  General Permit §§ Introduction ("as of July 1, 2015 [the General Permit] supersedes [the 1997 General Permit] excerpt for [the 1997 General Permit's] requirement to submit annual reports by July 1, 2015 and except for enforcement purposes"), I.7 (same).  Under the 1997 General Permit, dischargers were required to "submit an Annual Report by July 1 of each year" to the Regional Board, which includes "a summary [and evaluation] of visual observations and sampling results," "laboratory reports," a compliance evaluation report, and "an explanation of why a facility did not implement any activities required by the General Permit."  1997 General Permit § B.14; *see also* General Permit § XVI (same requirements with minor changes including a July 15 deadline).

b.     The 1997 General Permit required dischargers to perform monthly visual observations, as well as sampling and analysis for the "first storm event of the wet season" and at least one other storm event for "[a]ll storm water discharge locations."  1997 General Permit §§ B.4.a, B.5.a.  Where sampling from the first storm event of the season was not possible, dischargers were required to "explain in the Annual Report why [that] storm event was not sampled."  1997 General Permit § B.5.a.  Failure to perform the required monitoring or provide

1   any necessary explanations violates the CWA.  1997 General Permit § C.1; General Permit §

2   XXI.A; 33 U.S.C. § 1342.

3        17.    Under the CWA, "any citizen may commence a civil action" "against any person

4   . . . who is alleged to be in violation of (A) an effluent standard or limitation under [the CWA] or

5   (B) an Order issued by . . . a State with respect to such a standard or limitation."  33 U.S.C. §

6   1365(a)(1).  "No action may be commenced . . . prior to sixty days after the plaintiff has given

7   notice of the alleged violation (i) to the Administrator [of the EPA], (ii) to the State in which the

8   alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order."  33

9   U.S.C. § 1365(b)(1)(A).  By including a citizen suit provision in the CWA, Congress ensured

10  that the purposes and requirements of the CWA would be enforced, either by the United States

11  government or by concerned citizens.

12       18.    In furtherance of the water preservation goals established by the CWA, the citizen

13  suit provision confirms the district court's jurisdiction "to apply any appropriate civil penalties

14  under section 1319(d)."  33 U.S.C. § 1365(a).  Section 1319(d) declares that "[a]ny person who

15  violates . . . any permit condition or limitation implementing any of such sections in a[n NPDES]

16  permit . . . shall be subject to a civil penalty not to exceed $[37,500] per day for each violation."

17  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4; General Permit XXI.Q.1.

18       19.    Violations of provisions of the General Permit, including those detailed below,

19  constitute violations of the CWA and are subject to civil penalties.  General Permit § XXI; 33

20  U.S.C. §§ 1319(d), 1342, 1365(a); 40 C.F.R. §§ 19.1-19.4.

21                 **FACTUAL ALLEGATIONS WHICH GIVE RISE TO CLAIMS**

22       20.    Defendant's Facility blends soils and soil additives, and creates customized soil

23  blends and landscape materials for agricultural, vineyard, and construction use.  CEPA is

24  informed and believes that the Facility falls under standard industrial classification ("SIC") code

25  2875 (fertilizers, mixing only).

26       21.    CEPA is informed and believes that the Facility stores large quantities of soil, rock,

27  compost, wood, and other soil additives in piles that can be exposed to storm water, eroded by

28  wind, and otherwise contaminate the surrounding watershed.

22.     CEPA provided defendant with a 60-Day Notice of Violations and Intent to Sue, dated April 21, 2016.  Despite that notice, defendant continues to discharge storm water into the Russian River watershed without an NPDES permit, and has failed to take action to prevent or minimize such discharges.

23.     Defendant committed numerous violations of the CWA, Water Code, and General Permit, many of which are continuing as alleged herein.

24.     Defendant continues to operate and discharge pollutants to waters of the United States without NPDES coverage, in violation of the CWA.  Defendant failed to reapply for coverage under the General Permit by the July 1, 2015 deadline, and has continued to fail to reapply as of the date of this complaint.  Therefore defendant's NPDES coverage was terminated by the State and defendant is currently operating without NPDES coverage.  General permit §§ II.B.1, II.B.4.b, II.B.4.c, XXI.B.  Permit noncompliance constitutes a violation of the CWA and the Water Code, as well as the General Permit, and is grounds for enforcement action against the Facility.

25.     Defendant has also failed to submit a SWPPP to the Regional Board – through the SMARTS database or otherwise – as required by General Permit section X.  This failure violates the General Permit's demand that defendant submit the SWPPP "electronically via SMARTS," and maintain "a copy . . . at the facility."  General Permit § I.I.54.  Defendant failed to upload a SWPPP to the SMARTS database by the July 1, 2015 deadline, and no SWPPP has been provided since.  General Permit §§ I.I.54, X.B.  Defendant's continuing failure to comply with this requirement constitutes an ongoing violation of the CWA.  General Permit §§ X, XXI.A; 33 U.S.C. § 1342.

a.     Similarly, defendant has failed to prove the required Monitoring Implementation Plan as part of the SWPPP.  As of the date of this complaint, defendant has not provided a Monitoring Implementation Plan to the Regional Board via the SMARTS database or in hard copy.  Defendant's ongoing failure to obtain the necessary NPDES permit and submit the required SWPPP and Monitoring Implementation Plan are continuing violations of the CWA, Water Code, and General Permit.  General Permit §§ X.I, XXI.A; 33 U.S.C. § 1342.

26.     Defendant has failed to conduct the required monitoring under General Permit section XI.B.  Despite the General Permit's requirement that defendant collect and analyze samples from two QSEs in the first half of the reporting year and two QSEs from the second half of the reporting year, defendant has not provided any sampling data or analysis for the time period of July 1, 2015 through June 30, 2016 – the 2015-2016 reporting year.  General Permit § XI.B.  The General permit requires defendant to upload "all sampling and analytical results" to "SMARTS within 30 days of obtaining all results from each sampling event."  General Permit § XI.B.11.  In violation of these requirements, defendant has failed to upload any sampling data or analysis to the SMARTS database or provide such information to the Regional Board.  The failure to comply with conditions of the General Permit "constitutes a violation of the Clean Water Act and the Water Code and is grounds for an enforcement action . . . ."  General Permit § XXI.A; 33 U.S.C. § 1342.

27.     Defendant has failed to file an adequate Annual Report for the 2014-2015 reporting period with the Regional Board as required by sections B.5.a, B.7.d, B.8, and B.14 of the 1997 General Permit.  Defendant's 2014-2015 Annual Report admits that only one storm event was sampled for the reporting period of July 1, 2014 through June 30, 2015 and that no sample was collected from the first storm event of the wet season as required under the 1997 General Permit. 1997 General Permit § B.5.a; 2014-2015 Annual Report §§ E.1, E.2.  Where defendant is unable to sample from the first storm event of the season or to sample from an adequate number of storm events, the Annual Report must include an explanation.  1997 General Permit §§ B.5.a, B.14.  However, defendant's 2014-2015 Annual Report omits any explanation for these failures. Indeed, the explanations that are provided only address the admitted failure to collect from each sampling location on the site and to collect samples during the first *hour* of a storm event. 2014-2015 Annual Report, "Explanation Attachment Denbeste Yard & Garden, Inc." (State Board, 2007-2008 Annual Report).  None of the information provided in the 2014-2015 Annual Report explains why defendant only sampled one storm event that was not the first QSE of the wet season.  Defendant's failure to perform the required monitoring or provide necessary explanations constitutes a violation of the CWA.  1997 General Permit, § C.1; General Permit §

1    XXI.A; 33 U.S.C. § 1342.

2         28.    Information available to CEPA indicates that as a result of these practices, storm

3    water containing excessive pollutants is being discharged during rain events from the Facility to

4    the adjacent Icaria and Barrelli Creeks, tributaries of the Russian River.

5                              **FIRST CAUSE OF ACTION**
                              **(Violations of the Clean Water Act)**
6

7         29.    Each and every allegation set forth in this Complaint is incorporated herein by

8    reference.

9         30.    Each day since March 4, 2014 defendant has failed and is continuing to fail to

10   comply with the NPDES permitting requirements of the CWA, and in particular the General

11   Permit, and the 1997 General Permit, because defendant has failed and continues to fail to:

12            a.    obtain NPDES coverage;

13            b.    prepare and certify a compliant SWPPP, including a Monitoring

14   Implementation Plan;

15            c.    adequately monitor discharges; and

16            d.    file an adequate Annual Report.

17        31.    Noncompliance with the General Permit constitutes a violation of the CWA.

18   General Permit § XXI.A; 1997 General Permit § C.1; 33 U.S.C. § 1342.

19                              **RELIEF REQUESTED**

20        WHEREFORE, plaintiff respectfully requests that the Court enter judgment providing the

21   following relief:

22        1.    Declare defendant to have violated and to be in violation of the CWA;

23        2.    Issue an injunction ordering defendant to immediately reapply for NPDES coverage

24   and operate the Facility in compliance with the NPDES permitting requirements in the CWA;

25        3.    Enjoin defendant from discharging pollutants from the Facility and to the surface

26   waters surrounding the Facility until such time as defendant has developed and implemented an

27   adequate SWPPP, Monitoring Implementation Plan and Annual Report;

28        4.    Order defendant to pay civil penalties of $37,500 per day/per violation for each

violation of the Act pursuant to 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 (Dec. 11, 2008), 19.2-19.4 (Nov. 6, 2013);

5.     Order defendant to take appropriate actions to restore the quality of United States waters impaired by its activities on the Facility;

6.     Order defendant to pay CEPA's reasonable attorneys' fees and costs (including expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California law; and

7.     Award such other and further relief as may be just and proper.


Dated:  July 12, 2016              /s/ *Stephan C. Volker*_____
                                   STEPHAN C. VOLKER
                                   Attorney for Plaintiff CALIFORNIA ENVIRONMENTAL
                                   PROTECTION ASSOCIATION